BEFORE THE
UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| AUXIN SOLAR INC. | ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) | Court No. 23-00225 |
| UNITED STATES, | ) ) ) | |
| *Defendant*. | ) ) | |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiff Auxin Solar Inc. ("Auxin"), by and through its attorneys, alleges herein as follows.

## ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Auxin contests certain aspects of the U.S. Department of Commerce's ("Commerce") final determination in the anti-circumvention inquiry concerning crystalline silicon photovoltaic ("CSPV") cells, whether or not assembled into modules, from the People's Republic of China, published in the *Federal Register* on August 23, 2023, and mailed to interested parties on September 20, 2023. *See Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Scope Determination and Final Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57419 (Aug. 23, 2023) ("*Final Determination*"), and accompanying Issues and Decision Memorandum with respect to Thailand ("*Thailand IDM*"); *see also* Letter from Howard Smith, Program Manager (Sept. 20, 2023) ("Mailing").

## JURISDICTION

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1581(c) because this action is commenced under 19 U.S.C. § 1516a(a)(2)(B)(vi).

## TIMELINESS OF ACTION

3. This action is timely in accordance with 28 U.S.C. § 2636(c) as Auxin filed its Summons and Complaint within the time limits specified in 19 U.S.C. § 1516a(a)(2)(A)(ii) and United States Court of International Trade Rule 3(a)(2). Commerce's *Final Determination* was mailed to Auxin on September 20, 2023. *See* Mailing. Pursuant to 19 U.S.C. § 1516a(a)(2)(A)(ii), Auxin commenced this action by timely filing a Summons with this Court on October 20, 2023, which is within 30 days after the date the *Final Determination* was mailed to Auxin. Auxin is now filing this Complaint within thirty days after filing the Summons, consistent with United States Court of International Trade Rule 6(a)(1). Auxin initiated this action under 19 U.S.C. § 1516a(a)(2)(A)(ii) because Auxin is herein challenging an administrative determination concerning whether a particular type of merchandise is within the class or kind of merchandise subject to an antidumping or countervailing duty order, as described in 19 U.S.C. § 1516a(a)(2)(B)(vi).

## STANDING

4. Auxin is a manufacturer, producer, or wholesaler in the United States of a domestic like product. Auxin was also the party that requested the anti-circumvention inquiry that is subject of this appeal and actively participated in that inquiry by, for example, filing comments and administrative briefs. Accordingly, Auxin is an interested party within the meaning of 19 U.S.C. § 1677(9)(C) and has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## PROCEDURAL HISTORY

5. On December 7, 2012, Commerce published antidumping duty and countervailing duty orders covering CSPV cells, whether or not assembled into modules, from the People's Republic of China. *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 77 Fed. Reg. 73018 (Dec. 7, 2012) ("AD Order"); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Countervailing Duty Order*, 77 Fed. Reg. 73017 (Dec. 7, 2012) ("CVD Order") (collectively, "*Solar I Orders*").

6. On February 8, 2022, Auxin—a minority-and woman-owned, U.S.-headquartered, and U.S.-operated manufacturer of CSPV modules—requested that Commerce initiate a country-wide anti-circumvention inquiry pursuant to 19 U.S.C. § 1677j(b) with respect to imports of CSPV cells and modules from Thailand, as well as from Malaysia, Vietnam, and Cambodia. *See* Letter from Auxin, "Auxin Solar's Request for An Anti-Circumvention Ruling Pursuant To Section 781(b) of the Tariff Act of 1930, As Amended" (Feb. 8, 2022) ("*Request for Circumvention Inquiry*"). In its request, Auxin explained that "the production process for CSPV products generally includes the following main five stages: (1) polysilicon is refined, (2) the polysilicon is formed into ingots, (3) the ingots are sliced into wafers, (4) the wafers are converted to CSPV cells, and (5) the CSPV cells are assembled into modules." *Id.* at 26. Auxin explained that these "are discrete production steps that may occur in different plants or locations, and producers may source products at each stage of the value chain or produce the products in-house." *Id.* at 14. Auxin noted, however, that although "the exact input sourcing patterns for the companies within each country that is subject to this anticircumvention inquiry are not reasonably available," *id.* at 32, "{r}easonably available evidence establishes that certain

3

companies may complete the production process through polysilicon refinement, ingot formation and the production of the wafers in China, after which the wafers are converted to CSPV cells in {the exporting country} using additional and substantial Chinese-origin components." *Id*. at 27. Auxin alleged that the third country companies "may export the completed CSPV cells to the United States or assemble the cells into modules using additional and substantial Chinese-origin components before exporting the completed modules to the United States." *Id.*

7.  On April 1, 2022, Commerce found Auxin's request for circumvention inquiries met the requirements for initiation and initiated four country-wide circumvention inquiries, including the circumvention inquiry concerning CSPV cells and modules from Thailand that is at issue in this appeal. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Initiation of Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders*, 87 Fed. Reg. 19071 (Apr. 1, 2022) ("*Initiation Notice*").

8.  On May 12, 2022, Commerce selected Canadian Solar International Limited ("CSIL") and Trina Solar Science & Technology (Thailand) Ltd. ("TTL") as mandatory respondents in the country-wide anti-circumvention inquiry concerning imports of CSPV cells and modules from Thailand. *See* Commerce Memorandum, "Respondent Selection" (May 12, 2022).

9.  On December 8, 2022, Commerce published its preliminary determination and found that certain imports of CSPV cells and modules were circumventing the *Solar I Orders* pursuant to 19 U.S.C. § 1677j(b). *See Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 87 Fed. Reg. 75221 (Dec. 8, 2022) ("*Preliminary Determination*") and accompanying Decision Memorandum for Thailand ("*Thailand PDM*").

10. Specifically, pursuant to 19 U.S.C. §§ 1677j(b)(1)(A)-(B), Commerce found that merchandise imported into the United States from Thailand was of the same "class or kind" as the merchandise subject to the *Solar I Orders* and was "completed or assembled" in Thailand from parts and components produced in China. *See Thailand PDM* at 23. In analyzing whether the third country assembly operations were "minor or insignificant" pursuant to 19 U.S.C. §§ 1677j(b)(1)(C), (b)(2), Commerce departed from longstanding practice and adopted a new analytical framework that "compared the production of inquiry merchandise by the Thailand respondents to that of the respondents' affiliated producers in China," if any. *Id.* at 15. Using this company-specific analytical framework, Commerce preliminarily found "that the production of inquiry merchandise in Thailand is minor or insignificant for CSIL and TTL." *Id.* at 24. In addition, Commerce found that "the value of the merchandise produced in China that was used to produce inquiry merchandise is a significant portion of the total value of the merchandise exported from Thailand to the United States for CSIL and TTL" pursuant to 19 U.S.C. § 1677j(b)(1)(D). *Id.* Concerning "the three factors under section 781(b)(3) of the Act (*i.e.*, pattern of trade and sourcing, affiliations, and whether imports of parts and components from China increased), Commerce preliminarily {found} that each of these factors supports a preliminary affirmative determination of circumvention for CSIL and TTL." *Id.* In sum, based "on an analysis of the totality of the information on the record of these circumvention inquiries related to CSIL and TTL, {Commerce} preliminarily {found} that CSIL and TTL are circumventing the *Orders* in accordance with section 781(b) of the Act." *Id.*

11. Although Commerce preliminarily found that CSIL and TTL were circumventing the *Solar I Orders*, Commerce's preliminary analysis was flawed in several critical respects. Among other things, Commerce (1) unreasonably narrowed the scope of the anti-circumvention inquiry

5

by adopting a new definition of "inquiry merchandise" as CSPV cells that were produced using Chinese-origin polysilicon wafers and modules that incorporate CSPV cells produced from Chinese-origin wafers and at that incorporate at least three or more of six other specified components from China ("Wafer-Plus-Three" framework), which was contrary to the essence of Auxin's petition and inconsistent with record evidence; (2) departed from its longstanding product-specific analytical framework and adopted a company-specific analytical framework for analyzing whether assembly operations in third countries are "minor or insignificant" pursuant to 19 U.S.C. §§ 1677j(b)(1)(C), (b)(2); (3) failed to account for the production of the polysilicon input in its "minor or insignificant" analysis; and (4) included direct materials in its calculation of the value of the processing in Thailand. *See generally* PDM.

12. Following the *Preliminary Determination*, Commerce issued a bifurcated briefing schedule. "Tranche 1" briefs were limited to issues concerning Commerce's certification process, product coverage and definition of inquiry merchandise, and liquidation instructions. On March 6, 2023, Auxin filed its "Tranche 1" case brief. *See* Letter from Auxin Solar, "Auxin's Case Brief (Tranche 1)" (Mar. 6, 2023) ("*Tranche 1 Case Br.*"). On March 17, 2023, Auxin Solar filed its "Tranche 1" rebuttal brief. *See* Letter from Auxin Solar, "Auxin's Rebuttal Brief (Tranche 1)" (Mar. 17, 2023) ("*Tranche 1 Rebuttal Br.*"). In these briefs, Auxin contested Commerce's narrowing of the "inquiry merchandise" definition and adoption of the "Wafer-Plus-Three" analytical framework as inconsistent with the *Solar I Orders* and an arbitrary and belated narrowing of Auxin Solar's petition requesting circumvention inquiries that furthermore undermined the enforceability of Commerce's circumvention finding.

13. "Tranche 2" briefs addressed Commerce's analysis of the factual record and its substantive circumvention analysis. On April 26, 2023, Auxin filed its "Tranche 2" case brief.

*See* Letter from Auxin Solar, "Auxin's Case Brief (Tranche 2)—Thailand" (Apr. 26, 2023) ("*Tranche 2 Case Br.*"). On May 9, 2023, Auxin filed its "Tranche 2" rebuttal brief. *See* Letter from Auxin Solar, "Auxin's Rebuttal Brief (Tranche 2)—Thailand" (May 9, 2023) ("*Tranche 2 Rebuttal Br.*"). In these briefs, Auxin contested certain aspects of Commerce's substantive circumvention analysis, including its new company-specific analytical framework used in its "minor or insignificant" analysis, its failure to account for the production of polysilicon in its analysis, and its erroneous inclusion of direct material costs in the calculation of the value of the processing performed in Thailand by CSIL and TTL.

    14. On August 17, 2023, Commerce published its *Final Determination* and affirmed its preliminary finding that CSIL and TTL were circumventing the *Solar I Orders*. *See Final Determination* and Thailand IDM. In the *Final Determination*, Commerce (1) continued to adopt an arbitrary definition of "inquiry merchandise," (2) continued to apply a company-specific analytical framework for evaluating the "minor or insignificant" factors contrary to longstanding practice, (3) failed to account for the production of polysilicon in its analysis of the nature of the production process, and (4) continued to include direct materials in its calculation of the value of processing in Thailand. *See Thailand IDM*.

    15. As part of its *Final Determination*, Commerce implemented a certification regime that requires importers and exporters to certify whether, *inter alia*, the merchandise being imported/exported meets the definition of "inquiry merchandise." *See Final Determination*. By narrowing the definition of inquiry merchandise and including that unreasonably narrow definition in its certification regime, Commerce's certification regime is inconsistent with the request by Auxin for this inquiry and fails to capture all circumventing merchandise.

## STATEMENT OF CLAIMS

## PRODUCT COVERAGE CLAIMS

16. Although Auxin concurs with Commerce's affirmative individual respondent and country-wide determinations that certain CSPV products from Thailand are circumventing the *Solar I Orders*, Commerce has issued a determination that narrows the coverage of its affirmative determination in a manner that is unreasonable, unlawful, and unsupported by substantial evidence as raised in explicit counts below. Specifically, in crafting its certification regime, Commerce's *Final Determination* does not cover the full breadth of products that Auxin alleged are circumventing the *Solar I Orders* and as such, Auxin has been denied relief to which it is due under 19 U.S.C. § 1677j.

### Count One

17. Plaintiff hereby incorporates by reference paragraphs 1 through 16 of this Complaint.

18. In the *Final Determination*, Commerce significantly narrowed the scope of the anti-circumvention inquiry as alleged by Auxin by defining "inquiry merchandise" as:

> (A) crystalline silicon photovoltaic cells that meet the physical description of crystalline silicon photovoltaic cells in the scope of the underlying AD/CVD orders, subject to the exclusions therein, whether or not partially or fully assembled into other products, that were produced in Thailand from wafers produced in China; and (B) modules, laminates, and panels consisting of crystalline silicon photovoltaic cells, subject to the exclusions for certain panels in the scope of the underlying orders, whether or not partially or fully assembled into other products, that were produced in Thailand from wafers produced in China *and* where more than two of the following components in the module/laminate/panel were produced in China: (1) silver paste; (2) aluminum frames (3) glass; (4) backsheets; (5) ethylene vinyl acetate sheets; and (6) junction boxes.

*Thailand PDM* at 6; *see also Thailand IDM* at Comment 19. Commerce explained that if "modules, laminates, and panels consisting of crystalline silicon photovoltaic cells do not meet both of the conditions in item (B) above, then this circumvention inquiry does not cover the

modules, laminates, and panels, or the crystalline silicon photovoltaic cells within the modules, laminates, and panels, even if those crystalline silicon photovoltaic cells were produced in Thailand from wafers produced in China. Wafers produced outside of China with polysilicon sourced from China are not considered to be wafers produced in China for purposes of this circumvention inquiry." *Id.; see also Thailand IDM at Comment 19.* The requirements of item (B) are the "Wafer-Plus-Three" requirement.

19. Commerce's "Wafer-Plus-Three" requirement, however, is inconsistent with the agency's longstanding interpretation of the *Solar I Orders*, which holds that CSPV modules are within the scope of the orders if they incorporate CSPV cells that are subject to the *Solar I Orders*. Moreover, Commerce's Wafer-Plus-Three requirement is arbitrary and undermines any affirmative finding of circumvention insofar as CSPV cell and module producers can rely almost exclusively on Chinese-origin components and be excluded from the *Solar I Orders* and these circumvention inquiries so long as they source the three cheapest inputs from non-Chinese sources. Additionally, Commerce did not explain why its "Wafer-Plus-Three" requirement was reasonable or consistent with Auxin's request for a circumvention allegation, or Commerce's original initiation decision.

20. Commerce's "Wafer-Plus-Three" rule is unsupported by substantial evidence and not in accordance with law because it would allow imports of CSPV products to enter duty free when such imports undergo only minor processing in the third country.

21. Commerce's definition of "inquiry merchandise" was unreasonable, not supported by substantial evidence, and otherwise not in accordance with law because it impermissibly narrowed the scope of CSPV merchandise covered by the circumvention inquiries.

<u>Count Two</u>

22. Plaintiff hereby incorporates by reference paragraphs 1 through 21 of this Complaint.

23. In reaching an affirmative circumvention determination, Commerce adopted a certification regime to certify non-circumventing material. Insofar as that certification regime lacks any enforcement mechanism, Commerce's certification regime is not supported by substantial evidence and is not in accordance with law.

## ANALYTICAL CLAIMS

24. Although Commerce issued an affirmative final determination of circumvention, Commerce did so by applying a methodology that departed meaningfully from prior practice. Auxin briefed these arguments administratively. Auxin notes its awareness of the challenges to Commerce's *Final Determination* initiated by (1) Canadian Solar International Limited and Canadian Solar Manufacturing (Thailand) Co., Ltd. (collectively, "Canadian Solar"); and (2) Trina Solar Science & Technology (Thailand) Ltd. ("TTL") and currently pending in this court. *See Canadian Solar International Limited et al. v. United States,* USCIT Ct. No. 00222; *Trina Solar Science & Technology (Thailand) Ltd. v. United States,* USCIT Ct. No. 23-00227. Neither Canadian Solar nor TTL filed their Complaints in USCIT Ct. No. 23-00222 or USCIT Ct. No. 23-00227 prior to Auxin filing its Complaint in the instant action and Auxin is thus not aware of what specific arguments Canadian Solar and TTL intend to pursue in their respective actions. In the interest of judicial economy and to ensure that Auxin is not deemed by Commerce in any remand to have waived its right to raise these arguments, Auxin raises the following challenges. Specifically, if this court were to order remand for further proceedings with respect to the question of whether Canadian Solar or TTL was circumventing the *Solar I Orders*, Auxin considers that any analysis by Commerce during remand must account for the unaddressed

analytical concerns highlighted below.

Count Three

25. Plaintiff hereby incorporates by reference paragraphs 1 through 24 of this Complaint.

26. In determining whether the process of "completion or assembly" in Thailand is "minor or insignificant" pursuant to 19 U.S.C. § 1677j(b)(1)(C), the statute directs Commerce to take into account five factors: (1) level of investment in the foreign country, (2) level of research and development ("R&D") in the foreign country, (3) the nature of the production process in the foreign country, (4) the extent of production facilities in the foreign country, and (5) whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States. *See* 19 U.S.C. § 1677j(b)(2). Commerce has previously concluded as a matter of statutory interpretation that the purpose of the analysis set out in section 1677j(b)(1)(C) is to evaluate whether a process is minor or insignificant within the context of the totality of the production of subject merchandise. Therefore, Commerce's longstanding practice has been to apply a product-specific analytical framework that addresses the relative size and significance of the processing provided by the respondent in comparison to the processing necessary to produce the overall finished product. *See, e.g.*, *Small Diameter Graphite Electrodes from the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty Order*, 77 Fed. Reg. 47596 (Aug. 9, 2012), IDM at Comment 3; *Certain Corrosion-Resistant Steel Products from the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 83 Fed. Reg. 23895 (May 23, 2018), IDM at Comment 5.

27. In the *Final Determination,* however, Commerce unlawfully departed from this longstanding practice and evaluated whether cell fabrication and module assembly operations in Thailand were "minor or insignificant" within the meaning of 19 U.S.C. § 1677j(b)(1)(C) by comparing "the production of inquiry merchandise by the Thailand respondents to that of the respondents' affiliated producers in China," if any (*i.e.*, a company-specific analytical framework). Commerce's company-specific analytical framework is inconsistent with the statutory scheme and prior practice. Moreover, Commerce failed to explain why its departure from longstanding practice, and its adoption of an entirely new analytical framework never before applied in a circumvention inquiry, was reasonable or consistent with the statute. It is not consistent, insofar as it elevates quirks of corporate organization over what the statute actually directs Commerce to consider—the relative intensity and expense associated with production activities undertaken in Thailand, versus those undertaken in China.

28. Accordingly, Commerce's adoption of a new, company-specific analytical framework to analyze the minor or insignificant factors outlined in 19 U.S.C. § 1677j(b)(2) is not in accordance with law.

Count Four

29. Plaintiff hereby incorporates by reference paragraphs 1 through 28 of this Complaint.

30. In determining whether the process of "completion or assembly" in Thailand is "minor or insignificant" pursuant to 19 U.S.C. § 1677j(b)(1)(C), the statute directs Commerce to take into account five factors: (1) level of investment in the foreign country, (2) level of R&D in the foreign country, (3) the nature of the production process in the foreign country, (4) the extent of production facilities in the foreign country, and (5) whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise

imported into the United States. *See* 19 U.S.C. § 1677j(b)(2). The statute expressly does not allow Commerce to consider affiliation as part of its analysis of whether the assembly or completion operations in Thailand are "minor or insignificant." Rather, Congress has provided that affiliation is only one of three additional "factors to consider." 19 U.S.C. § 1677j(b)(3).

31. Insofar as Commerce adopted a company-specific analytical framework that elevated affiliation to a mandatory criterion for finding assembly or completion operations to be "minor or insignificant" where the statute expresses no such requirement, Commerce's analysis of the "minor or insignificant" factors is not in accordance with law.

## Count Five

32. Plaintiff hereby incorporates by reference paragraphs 1 through 31 of this Complaint.

33. In determining whether the process of assembly or completion in Thailand is "minor or insignificant," the statute instructs Commerce to evaluate, *inter alia*, the (1) level of investment in the foreign country and (2) the extent of production facilities in the foreign country. *See* 19 U.S.C. §§ 1677j(b)(2)(A), (D).

34. In the *Final Determination*, Commerce unlawfully and unreasonably compared CSIL's and TTL's investments in, and production facilities for, cell fabrication and module assembly in Thailand to the investments in, and production facilities for, CSPV production by their respective affiliates in China that did not engage in all five stages of CSPV production. Specifically, Commerce compared CSIL's investment in, and production facilities for, cell fabrication and module assembly in Thailand to its affiliate's investments in, and production facilities for, production of ingots and wafers in China. Commerce compared TTL's investments in, and production facilities for, cell fabrication and module assembly in Thailand to a single affiliated wafer producer in China. Contrary to longstanding practice, Commerce did not compare CSIL's

and TTL's investments and production facilities in Thailand to those investments and production facilities required to produce subject merchandise in China.

35. Accordingly, Commerce's finding that CSIL's and TTL's investments in, and production facilities for, for cell fabrication and module assembly in Thailand were not "minor or insignificant" is unsupported by substantial evidence.

## Count Six

36. Plaintiff hereby incorporates by reference paragraphs 1 through 35 of this Complaint.

37. In determining whether the "process of assembly or completion is minor or insignificant" pursuant to 19 U.S.C. § 1677j(b)(1)(C), the statute directs Commerce to take into account, *inter alia*, "the nature of the production process." 19 U.S.C. § 1677j(b)(2)(C). In its request for a circumvention inquiry, Auxin Solar explained that "the production process for CSPV products generally includes the following main five stages: (1) polysilicon is refined, (2) the polysilicon is formed into ingots, (3) the ingots are sliced into wafers, (4) the wafers are converted to CSPV cells, and (5) the CSPV cells are assembled into modules." *Request for Circumvention Inquiry* at 26. Commerce, the U.S. International Trade Commission, and the CSPV industry in general acknowledge that these are the five primary stages of the CSPV production process.

38. In the *Final Determination*, however, Commerce did not consider the production of polysilicon (*i.e.*, Stage 1) in its analysis of the "nature of the production process" for CSPV cells and modules pursuant to 19 U.S.C. § 1677j(b)(2)(C).

39. Accordingly, Commerce's determination that the "nature of the production process in the inquiry country is not minor or insignificant" pursuant to 19 U.S.C. § 1677j(b)(2)(C) is not supported by substantial evidence and is not in accordance with law because the agency failed to account for first and most important stage of the CSPV production process in its analysis.

Count Seven

40. Plaintiff hereby incorporates by reference paragraphs 1 through 39 of this Complaint.

41. In determining whether the "process of assembly or completion is minor or insignificant" pursuant to 19 U.S.C. § 1677j(b)(1)(C), the statute directs Commerce to take into account, *inter alia*, "the nature of the production process." 19 U.S.C. § 1677j(b)(2)(C).

42. In its analysis of the nature of the production process in the *Final Determination* Commerce evaluated several factors, the overwhelming majority of which support finding the production of polysilicon, ingots, and wafers to be more complex and sophisticated than cell fabrication and module assembly. In particular, record evidence showed, *inter alia*, that production of polysilicon, ingots, and wafers have higher capital requirements and costs associated with building manufacturing facilities, required greater time to build those facilities, had higher technical hurdles associated with starting up operations, consumed vastly more energy, and had a larger number of production stages than cell fabrication and module assembly. Notwithstanding this overwhelming evidence, Commerce found the nature of the production process not to be "minor or insignificant" based on a minority of the factors analyzed.

43. Accordingly, Commerce's determination that the "nature of the production process in the inquiry country is not minor or insignificant" pursuant to 19 U.S.C. § 1677j(b)(2)(C) is not supported by substantial evidence because Commerce failed to account for record evidence demonstrating the production of polysilicon, ingots, and wafers were more complex, costly, and sophisticated than cell fabrication and module assembly.

Count Eight

44. Plaintiff hereby incorporates by reference paragraphs 1 through 43 of this Complaint.

45. In determining whether the process of assembly or completion is minor or insignificant, the statute directs Commerce to take into account, *inter alia*, "whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States." 19 U.S.C. § 1677j(b)(2)(E). In prior anti-circumvention cases, Commerce has concluded as a matter of statutory interpretation that the value of direct materials should not be part of its processing calculation pursuant to 19 U.S.C. § 1677j(b)(2)(E). *See Hydrofluorocarbon Blends from the People's Republic of China: Final Negative Scope Ruling on Gujarat Fluorochemicals Ltd.'s R-401A Blend; Affirmative Final Determination of circumvention of the Antidumping Duty Order by Indian Blends Containing Chinese Components*, 85 Fed. Reg. 61930 (Oct. 1, 2020), IDM at Comment 3.

46. In the *Final Determination*, Commerce unlawfully included the value of direct materials in its processing calculation for both CSIL and TTL. Commerce's decision to include direct materials in calculating the value of processing is inconsistent with the plain language of the statute as well as Commerce's prior interpretation of 19 U.S.C. § 1677j(b)(2)(E).

47. Accordingly, Commerce's analysis in the *Final Determination* of the value of processing pursuant to 19 U.S.C. § 1677j(b)(2)(E) is not supported by substantial evidence and is not in accordance with law.

**REQUEST FOR JUDGMENT AND RELIEF**

WHEREFORE, Auxin respectfully requests that this Court:

48. Hold that Commerce's *Final Determination* was not supported by substantial evidence or in accordance with law;

49. Remand this matter to Commerce for disposition consistent with the final opinion and order of the Court; and

50. Grant such further relief as this Court deems just and proper.

Dated:  November 20, 2023                                   Respectfully submitted,

/s/ Thomas M. Beline

Thomas M. Beline
Sarah E. Shulman
James E. Ransdell
Chase J. Dunn
**CASSIDY LEVY KENT (USA) LLP**
900 19th Street, NW, Suite 400
Washington, D.C. 20006
Phone: (202) 567-2300
Email: tbeline@cassidylevy.com

*Counsel to Auxin Solar*